IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dr. Stephen Hefner | ) | C/A No. 3:23-cv-02156-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF DR. STEPHEN** |
| School District Five of Lexington and | ) | **HEFNER'S OPPOSITION TO** |
| Richland Counties, Kenneth Loveless | ) | **DEFENDANTS' MOTION FOR** |
| individually and his official capacity, | ) | **PROTECTIVE ORDER** |
| Catherine Huddle individually and in her | ) | |
| official capacity, Jan Hammond individually | ) | |
| and her official capacity, and Jaramillo | ) | |
| Accounting Group, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Once a defendant, now Plaintiff, Dr. Stephen Hefner ("Plaintiff"), was targeted by a frivolous lawsuit from School District Five of Lexington and Richland Counties ("District") for raising concerns to Cognia, the District's accrediting agency, about a questionable superintendent hiring arrangement between the District and HeartEd, LLC. During the depositions of former board member Mr. Kenneth Loveless ("Mr. Loveless") and current board member Ms. Huddle ("Ms. Huddle"), Dr. Hefner merely asked them, "*why*?" Why did Mr. Loveless, Ms. Huddle, and the Board vote to sue him for raising concerns over the arrangement with Dr. Ross's LLC? Why did they and the Board vote to continue the District's lawsuit against Dr. Hefner despite Cognia indicating it would not take action on Dr. Hefner's complaint? And consequently, what was discussed in executive session regarding these reasons?

At the direction and advice of the District's counsel, Mr. Loveless and Ms. Huddle refused to answer these fundamental questions, citing legislative immunity/privilege and attorney-client

privilege. For the reasons below, these answers are not subject to either privilege. The Defendants' Motion for Protective Order should be denied, and Mr. Loveless, Ms. Huddle, and the remaining Board members should provide these answers.

## BACKGROUND

This case arises primarily from a frivolous lawsuit filed by the District against Dr. Hefner. On or about June 22, 2021, the District entered into an agreement for Interim Superintendent Services with HeartEd, LLC. According to the agreement, HeartEd, LLC agreed to provide superintendent services for the District through Dr. Akil Ross from July 1, 2021, to June 30, 2022.

Dr. Hefner is a former superintendent of the District and other school districts in South Carolina. Dr. Hefner, along with another former superintendent of the District and former board members of the District, were concerned with the District's unorthodox arrangement with HeartEd, LLC and Dr. Ross. As such, on or about August 4, 2021, Dr. Hefner and the other individuals sent a letter and complaint to Cognia, the District's accrediting agency ("First Cognia Letter"). (*See* First Cognia Letter herein attached as **Exhibit 1**). On August 23, 2021, the District sternly replied to Dr. Hefner requesting that he withdraw the First Cognia Letter and apologize or risk a lawsuit. On the same day, the District's Board voted to retain an attorney to pursue a lawsuit for malicious interference with the District's contract with HeartEd, LLC if Dr. (*See* Ltr from Atty White herein attached as **Exhibit 2**).

Dr. Hefner and the other complainants did not withdraw their complaint to Cognia and instead sent a second letter to Cognia on September 3, 2021 ("Second Cognia Letter"). (*See* Second Cognia Letter herein attached as **Exhibit 3**). The Second Cognia Letter clarified information that was included in the First Cognia Letter and raised a concern over the District's response to the First Cognia Letter. The District's Board meeting minutes for September 13 and October 11, 2021,

indicate that the Board received advice on the "Cognia matter" in executive session. (*See* September 13 and October 11, 2021, Board minutes herein attached as **Exhibit 4**). On November 10, 2021, the District filed a lawsuit against Dr. Hefner in state court asserting a single cause of action for interference with a contractual relationship. On December 13, 2021, and again on August 8, 2022, the District Board voted against a motion to dismiss the lawsuit against Dr. Hefner. (December 13, 2021, and August 8, 2022, Board minutes herein attached as **Exhibit 5**[1]) These meeting minutes also reflect that the lawsuit was discussed during executive session. Finally, on September 26, 2022, the District Board voted to dismiss the lawsuit against Dr. Hefner, and these meeting minutes also indicate that the District discussed the lawsuit during executive session. (September 26, 2022, Board minutes herein attached as **Exhibit 6**).

Notably, a claim for tortious interference with a contractual relationship requires the Plaintiff to show (1) the existence of a contract; (2) knowledge of the contract by the tortfeasor; (3) intentional procurement by the tortfeasor of the contract's breach; (4) absence of justification; and (5) damages. *DeBerry v. McCain*, 275 S.C. 569, 574, 274 S.E.2d 293, 296 (1981). It is well established that "where there is no breach of the contract, there can be no recovery." *Sea Island Food Grp., LLC v. Yaschik Dev. Co., Inc.*, 433 S.C. 278, 286, 857 S.E.2d 902, 906 (Ct. App. 2021), reh'g denied (May 12, 2021) (citations omitted). In response to a request for admission, the District admitted that the "contract entered into between the [District] and HeartEd, LLC was never breached by either the Plaintiff or HeartEd, LLC." (*See* District Resp. to Dr. Hefner's Req. for Ad. ¶ 1 herein attached as **Exhibit 7**). As such, the District has admitted that its lawsuit against Dr. Hefner had no basis in fact.

---

[1] The December 13, 2021 Board minutes can be found at [1-10-2022_BoardPacket.pdf (finalsite.net)](). In preparing this response, Plaintiff realized they were inadvertently excluded from production. Plaintiff will supplement its production to include these meeting minutes.

In response to the lawsuit filed by the District, Dr. Hefner asserted numerous counterclaims, including a § 1983 claim based on the District's depravation of Dr. Hefner's constitutional right to free speech. After the District dismissed its claims, Dr. Hefner later amended his claim to add additional causes of actions and defendants, including then Board member Mr. Loveless, Ms. Huddle, and Ms. Jan Hammond in their personal capacities. Likewise, the court realigned the parties, and the District removed the case to federal court.

## **STANDARD**

Federal Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.... The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The party moving for a protective order bears the burden of establishing good cause." *Slager v. Southern States Police Benevolent Association, Inc.*, 2016 WL 4123700, at * 2 (D.S.C Aug. 3, 2016) (quoting *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 278 (D. Md. 2012)). "To establish good cause, a party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" about the need for a protective order and the harm suffered without one. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991); *see also In re Carrsow-Franklin*, 456 B.R. 753, 756 (Bankr. D.S.C. 2011).

"Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988). In other words, "the Court must weigh the need for the information versus

4

the harm in producing it." *A Helping Hand, LLC v. Baltimore Cty., Md.*, 295 F.Supp.2d 585, 592 (D. Md. 2003) (internal quotation marks omitted). "The standard for issuance of a protective order is high." *Nix v. Holbrook*, 5:13–cv–02173, 2015 WL 631155, at *2 (D.S.C. Feb. 13, 2015) (citing *Minter v. Wells Fargo Bank*, N.A., 258 F.R.D. 118, 125 (D. Md. 2009)). However, courts are afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

## **ARGUMENT**

Mr. Loveless and Ms. Huddle's claims of legislative and attorney-client privilege to justify their refusal to answer deposition questions are unfounded. These questions, as well as related discussions, pertain to their decisions to initiate and continue supporting a frivolous lawsuit against Dr. Hefner.

Foremost, Mr. Loveless and Ms. Huddle are not entitled to legislative privilege because the District and the individual members of the Board's act of filing a lawsuit against a private citizen is not legislative—it is an administrative act. But even if Mr. Loveless and Ms. Huddle are entitled to legislative privilege, such privilege does not apply. It has been waived by the District and the individual Board members due to their public comments and participation in the litigation.

Likewise, Dr. Hefner does not dispute that attorney-client privilege applies to executive session in certain instances. Yet, the District has waived the privilege through the presence of third parties and by publicly sharing information exchanged in executive session on social media and to the public during Board meetings. Moreover, the privilege is inapplicable because the purported legal advice, namely the decision to sue Dr. Hefner, is "at issue" in this case such that the District has put "at issue" the very facts it now seeks to protect.

I.      **Mr. Loveless, Ms. Huddle, and the District are not entitled to legislative privilege.**

Legislative privilege has a single, simple trigger: whether the legislator's act was legislative.[2] "[O]nce it is determined that Members [of Congress] are acting within the legitimate legislative sphere the Speech or Debate Clause is an absolute bar to interference." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (internal quotation marks omitted).[3]

"In determining whether particular activities other than literal speech or debate fall within the 'legitimate legislative sphere' ... [courts] must determine whether the activities are 'an integral part of the deliberative and communicative processes by which Members [of Congress] participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'" *Id.* at 503–04 (citations omitted). Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. *Bogan*, 523 U.S. at 54.

Because the scope of protection depends on the particular action of the legislators, it first must be determined whether the action in question is legislative or administrative. *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995). In reaching this determination, the Fourth Circuit has used

---

[2] Legislative privilege flows from legislative immunity. Yet, they have different functions. Legislative immunity protects legislators from civil liability, while legislative privilege functions as an evidentiary and testimonial privilege. *See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) (citing *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967)). Despite Defendants' contentions, whether or not the District or the individual Board members defendants are entitled to civil liability protection through legislative immunity is not before the Court in this Motion.

[3] The Supreme Court has extended these same principles to apply to the legislative acts of local authorities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 53; *S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152, 162 n.2 (D.S.C. 2022) (citing *Bethune-Hill*, 114 F.Supp.3d at 334) ("As applied to state lawmakers, both legislative immunity and privilege are grounded in federal common law rather than federal constitutional or statutory law.").

a test, formulated by the First and Fifth Circuits, to ascertain whether an act is legislative rather than administrative. The analysis focuses on (1) "the nature of the facts used to reach the ... decision" and (2) "the particularity of the impact" of the state action. *Id*. at 66. Under this test, the key inquiry involves making a distinction between general and specific actions. *Alexander*, 66 F.3d at 66. If the underlying facts "relate to particular individuals or situations" and the decision impacts specific individuals or "singles out specifiable individuals," the decision is administrative. *Id*. On the other hand, the action is legislative if the facts involve "generalizations concerning a policy or state of affairs" and the "establishment of a general policy" affecting the larger population. *Id.* (citations omitted).

Employment and personnel decisions highlight the distinction between legislative and administrative acts. When a legislative body or council eliminates an entire position, rather than merely terminating the employment of a specific individual, the legislative body is regarded as having acted in a legislatively-protected manner. *Rateree v. Rockett*, 852 F.2d 946, 950 (4th Cir. 1980). On the other hand, in *Roberson*, the Fourth Circuit determined that the six members of the County Board who voted to terminate the plaintiff, as opposed to his position, were not acting in their legislative capacity. *Roberson v. Mullins*, 29 F.3d 132, 135 (4th Cir. 1994).

The Defendants' Motion for Protective Order assumes that the District's decision (including Mr. Loveless and Ms. Huddle) to sue Dr. Hefner for his letter to Cognia is a legislative act. This is not so. Rather, the very nature of the District suing a particular citizen is administrative and therefore is not entitled to privilege. Suing Dr. Hefner singled out *one individual* alone—Dr. Hefner. Likewise, the lawsuit impacted *one individual* alone—Dr. Hefner.[4]

---

[4] Despite being one of four individuals who signed the First and Second Cognia Letter, Dr. Hefner was the only one sued by the District.

7

While it is the position of Mr. Loveless, Ms. Huddle, and presumably the District that the lawsuit was filed against Dr. Hefner to protect the District from potentially losing its accreditation, this position falsely presumes that Cognia could or would unilaterally revoke the accreditation of the District on a single complaint alone and without an investigation. Yet, no evidence in the record supports the District's position. In fact, the opposite is true. Testimony suggests that Cognia indicated to the District as early as 2021 that the nature of Dr. Hefner's complaint did not rise to a level to warrant an investigation. Cognia communicated this to Board members and District officials as early as September 2021. Nevertheless, the District continued its frivolous lawsuit against Dr. Hefner. In further support that the lawsuit is an administrative act, Board members publicly stated that the lawsuit was an attempt to extract a *personal apology* from Dr. Hefner. LexRich5 Board Meetings, *December 13, 2021-Action Agenda*, YouTube (Dec. 15, 2021).[5]

Had the District taken actual legislative action, it would have passed a motion supporting its arrangement with interim Superintendent Dr. Ross' LLC. This act would have concerned a general policy-making function affecting the district's constituents. Rather, the Board voted to sue Dr. Hefner *alone* for expressing genuine concern regarding this arrangement. This act is purely administrative and, therefore, cannot avail itself of legislative privilege protections.

II. **Even if the District's actions are deemed to be legislative, the privilege has been waived.**

"Legislative privilege 'is a personal one and may be waived . . . by each individual legislator." *See, e.g., Alexander v. Holden*, 66 F.3d 62, 68 n.4 (4th Cir. 1995) (quoting *Marylanders for Fair Representation v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992). A legislative waiver may occur when a party testifies as to otherwise privileged matters or when purportedly privileged

---

[5] https://www.youtube.com/watch?v=5qFF8uWq34k (at 3:30).

communications are shared with outsiders. *See Trombetta v. Bd. of Educ., Proviso Twp. High Sch. Dist. 209*, No. 02 C 5895, 2004 WL 868265, at *5 (N.D. Ill. Apr. 22, 2004) (citing *Alexander v. Holden*, 66 F.3d 62, 68 n. 4 (4th Cir.1995) (legislative privilege "is waivable and is waived if the purported legislator testifies, at a deposition or otherwise, on supposedly privileged matters"); *Virgin Islands v. Lee*, 775 F.2d 514, 520 n. 7 (3d Cir.1985); *Marylanders for Fair Representation*, 144 F.R.D. at 298); *see also Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) ("As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider."). Importantly, courts have been loath to allow a legislator to invoke the privilege at the discovery stage, only to selectively waive it thereafter in order to offer evidence to support the legislator's claims or defenses. *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012)

Here, legislative privilege, such that it exists, has been waived by both Mr. Loveless and Ms. Huddle.

  **a.  Waiver of legislative privilege by Mr. Loveless**

At the December 13, 2021, then board member Mr. Loveless openly discussed the lawsuit against Dr. Hefner, stating, "a former superintendent that knew better than to do this . . . all we're asking for is a formal apology to this school district . . . that's the only thing we're asking for." Ms. Huddle replied, "I don't think it's appropriate to get *attorney advice* in public" LexRich5 Board Meetings, *December 13, 2021-Action Agenda*, YouTube (Dec. 15, 2021).[6] Again, at the September 22, 2022, Board meeting, then Board member Mr. Loveless stated, "Dr. Hefner had attacked the District's accreditation by sending an unfounded complaint . . . Cognia has taken no action and has

---

[6] https://www.youtube.com/watch?v=5qFF8uWq34k (at 3:30).

stated it will not take action. As a result, the lawsuit is no longer necessary to protect the school district's accreditation." LexRich5 Board Meetings, *September 26, 2022-Action Agenda, Discussion Agenda & Adjournment*, YouTube (Sep. 27, 2022).[7]

Yet at Mr. Loveless' deposition, when asked questions of *why* he voted to sue Dr. Hefner and continue the lawsuit, Mr. Loveless was instructed not to respond by counsel for the District based on "legislative privilege or immunity." (Dep. of Loveless pp. 110:5-25; 111:1-9, herein attached as **Exhibit 8**[8]). Again, when asked whether then Board member Mr. Loveless believed the lawsuit needed to move forward to deter politically motivated action against the board and Dr. Ross, counsel for the District instructed Mr. Loveless not to respond based on the same objection. (*Id*. p. 126:6-15).

Mr. Loveless has been selective in the invocation of legislative privilege. In fact, in response to Dr. Hefner's interrogatory request asking the "reasons, motivations, and any or facts" both individually and as an elected official that led him and the District to bring suit, Mr. Loveless answered, "the subject decision was made by the [District] upon (sic) advice of legal counsel, and is therefore privileged." (Mr. Loveless' Resp. to Dr. Hefner's Interrog. ¶¶ 5, 7, herein attached as **Exhibit 9**). Notably, legislative privilege is not expressly mentioned in Mr. Loveless' answer. Yet, when asked about Mr. Loveless and the District's decision to perform an audit, Mr. Loveless answered, "the consideration and decision to perform an audit on behalf of the District is made by the [Board] and as such, is subject to *legislative privilege*." (*Id*. ¶8). Raising legislative privilege in an answer to one interrogatory, but not another interrogatory concerning his and the District's

---

[7] https://www.youtube.com/watch?v=Q8ctPFJGP60 (at 1:00).
[8] For brevity and due to portions of Mr. Loveless' deposition being labeled as confidential, only the relevant portions of Mr. Loveless' and Ms. Huddle's deposition transcript will be provided as exhibits.

decision to sue, amounts to a waiver of such privilege. Thus, Mr. Loveless should be required to answer Dr. Hefner's questions.

      b.      **Waiver of legislative privilege by Ms. Huddle**

Even after stating that the Board's open discussions of the lawsuits were not "appropriate," Board member Huddle posted her thoughts about the Cognia complaint and Dr. Hefner on Facebook. (Dep. of Huddle p. 36:12-25; August 24, 2021, Huddle-Together for Lex Rich 5 School Board Post; herein attached as **Exhibit 10**). Remarkably, in addition to publicly discussing the lawsuit, when asked about the Facebook post, Ms. Huddle testified in her deposition that some of the contents of the Facebook post were discussed in executive session at an August 23, 2021, Board meeting. (*Id*. p. 37:11-22 Mr. Kea: "The one that entitled 'Legal Advice on Accreditation Complaint?'" Ms. Huddle: **"The third bullet was discussed in executive session."**).

Yet, when asked about the reasons to pursue a lawsuit against Dr. Hefner discussed in the same executive session, counsel for the District instructed Ms. Huddle not to respond based on legislative immunity and privilege. Counsel for Ms. Huddle objected for the same reason when asked *why* Ms. Huddle voted to sue Dr. Hefner and subsequently continued the lawsuit against him (*Id*. p. 39:4-15). Ms. Huddle has waived her legislative privilege by posting on Facebook about executive session discussions.

Identical to Mr. Loveless, Ms. Huddle also waived legislative privilege in her responses to Dr. Hefner's Interrogatories. In response to Dr. Hefner's interrogatory regarding her decision, both individually and as an elected official, to bring a lawsuit, Ms. Huddle does not raise legislative privilege. (Ms. Huddle's Resp. to Dr. Hefner's Interrog. ¶¶ 5 & 7, herein attached as **Exhibit 11**). Yet, she *does* raise legislative privilege in response to Dr. Hefner's question regarding the District's

decision to conduct an audit. (*Id*. ¶8). This selective invocation amounts to a waiver of legislative privilege, and Ms. Huddle should, therefore, be required to answer Dr. Hefner's questions.

III. **The District's reliance on attorney-client privilege is misplaced**.

Despite merely providing its legal elements and otherwise failing to provide any analysis on the issue, Defendants contend that similar testimony of "*why*" the District sued Dr. Hefner and voted to continue the lawsuit is protected by attorney-client privilege. Dr. Hefner agrees that communications in executive sessions can be privileged. However, Defendants have waived that privilege through public discussions of the lawsuit, third-party presence in executive session, and by putting "at issue" in this litigation the very facts it now seeks to protect.

a. **Defendants fail to adequately address the issue of attorney-client privilege in their Motion.**

As an initial matter, Defendants' attempt to protect the information via the attorney-client privilege should be rejected because the issues are not adequately raised in their briefing. "Generally, courts are disinclined to address arguments that are not adequately raised in a party's briefing." *South Carolina v. United States*, 232 F. Supp. 3d 785, 796 (D.S.C. 2017); *see also De–Occupy Honolulu v. City & Cnty. of Honolulu*, No. 12–006688 JMS–KSC, 2013 WL 2284942, at *6 n.9 (D. Haw. May 21, 2013); *Seifer v. PHE, Inc.*, 196 F.Supp.2d 622, 625 n.4 (S.D. Ohio 2002); *Callahan v. Barnhart*, 186 F.Supp.2d 1219, 1230 n.5 (M.D. Fla. 2002). Moreover, because the movant for protective order bears the burden, it cannot rest on "stereotyped and conclusory statements" alone. *Small v. Ramsey*, 280 F.R.D. 264, 269 (N.D. W. Va. 2012); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 144 (E.D. Tex. 2003) (denying a movant's protective order where it only provided conclusory statements); *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

In their Motion, Defendants merely conclude that the "sought after testimony is similarly subject to the privileges afforded to executive session," then proceed to recite the elements of attorney-client privilege without addressing how or why it may apply in this case. This argument is completely conclusory, inadequate, and insufficient for the Court to address, let alone grant a protective order on such a basis.

> **b.   Defendants waived attorney-client privilege by revealing executive session discussion to the public and conducting executive session in the presence of third parties.**

The Fourth Circuit rejects the concept of limited waiver of attorney-client privilege. *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988). "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). And, at least where the disclosure is voluntary, the privilege is waived "not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Id*.

Likewise, "[a]ny voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject." *First South Bank v. Fifth Third Bank, N.A.*, No. 7:10–2097–MGL, 2013 WL 1840089 (D.S.C. May, 1, 2013) (citing *Floyd v. Floyd*, 365 S.C. 56, 615 S.E.2d 465, 483 (S.C. Ct.App. 2005)).

As mentioned above, on at least two occasions (the December 13, 2021, and August 8, 2022, Board meetings), the District referenced—in open session—executive session information pertaining to the lawsuit against Dr. Hefner. It is apparent the discussions by Defendants in open session was materially discussed in executive session because Trustee Huddle states, "I don't think it's appropriate to get *attorney advice* in public", LexRich5 Board Meetings, *December 13, 2021-*

13

*Action Agenda*, YouTube (Dec. 15, 2021),[9] and "I call for the question, I don't think it's appropriate to have this *discussion in public*." LexRich5 Board Meetings, *August 8, 2022 - Action Agenda, Discussion Agenda & Adjournment*, YouTube (Aug. 10, 2022).[10]

Furthermore, in an August 23, 2021, "recap" of the previous day's Board meeting, Ms. Huddle posted on Facebook, "*Legal Advice* on Accreditation Complaint." Again, in her deposition, Ms. Huddle testified that at least some of the material in this Facebook post was discussed in executive session with former District attorney Andrea White. (Dep. of Huddle p. 37:11-22). These discussions by Defendants and social media postings amount to a voluntary waiver of attorney-client privilege, such that all communications in executive session concerning the Cognia complaint and the lawsuit against Dr. Hefner are now waived.

Additionally, Mr. Loveless and Ms. Huddle testified at their depositions that Ms. Audrey Jaramillo of Jaramillo Accounting Group ("JAG") participated in an executive session of a board meeting. (Dep. of Loveless pp. 207:21-25; 208:1-21, Mr. Knicely: "You talked to JAG in executive session?" Mr. Loveless: "**Absolutely**"); (Dep. of Huddle p. 86:14-15 Mr. Kea: "[Ms. Jaramillo] was in executive session with you?" Ms. Huddle: "**Yes**"). From the testimony of both, it is believed that Ms. Jaramillo was present in at least the September 19, 2022, executive session. However, specific dates could not be confirmed by either Mr. Loveless or Ms. Hammond. Regardless of which date exactly, Ms. Jaramillo's presence in executive session amounts to a complete waiver of attorney-client privilege in these executive sessions.

---

[9] https://www.youtube.com/watch?v=5qFF8uWq34k (at 3:30).
[10] https://www.youtube.com/watch?v=rArIGxVRWw8 (at 5:35).

### c. Defendants waived attorney-client privilege by putting their attorney's actions "at issue" in this litigation.

When asked simply "*why*" Defendants decided to sue Dr. Hefner, Defendants hope to be able to respond, "because I relied on legal advice." In fact, Mr. Loveless and Ms. Hammond testified this was at least one of the reasons they decided to sue Dr. Hefner.[11] (Dep. of Huddle p. 63:1-2; Dep. of Loveless p. 162:6-19). Their interrogatory responses confirm the same. This response by Defendants amounts to a waiver of attorney-client privilege because it puts "at issue" facts that necessarily involve the examination of the attorney's advice to the District.

Our District Courts agree. The "at issue waiver of the attorney-client privilege occurs when the party puts 'at issue' some fact that necessarily involves an examination of the attorney's advice [or communication] to the client." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 12910907, at *5–7 (D.S.C. Sept. 23, 2015), report and recommendation adopted, No. 2:13-CV-1831-DCN, 2015 WL 12907896 (D.S.C. Nov. 5, 2015) (finding that the plaintiff waived attorney-client privilege by bringing a claim against the defendant and then invoking the privilege to shield the reasons for initiating the lawsuit.); *United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013).

> A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

---

[11] In her deposition, Ms. Huddle testified that she relied on legal advice to sue and continue the lawsuit of Dr. Hefner. (Dep. of Huddle p. 62:12-18). Clarifying, Ms. Huddle also testified, "Well, there were some other reasons." (*Id*.). When counsel for Dr. Hefner asked what the other reasons were, counsel for the District instructed Ms. Huddle not to respond. (*Id*. p. 621:20-24, Mr. Kea: "Okay. Well, what were some of the other reasons?" Mr. Wren: **"There I've got to object, instruct not to answer to substantive reasons or discussion"**).

Mr. Loveless, Ms. Hammond, and the District asserted attorney-client privilege as a result of their own affirmative act—suing Dr. Hefner for tortious interference with a contract. Defendants now improperly seek to use attorney-client privilege as a shield when asked why they initiated the lawsuit. While stating "because we relied on legal counsel" is an appropriate testimony, Dr. Hefner should now be permitted to inquire further about this legal advice, including the reasons behind the Board's decision to initiate and proceed with the lawsuit against him. These facts are crucial to his case and should not be left unanswered.

## **CONCLUSION**

Legislative privilege is inapplicable. Even if it were applicable, it has been waived individually by Mr. Loveless and Ms. Huddle. Similarly, attorney-client privilege has been waived by their actions and by placing the District's legal advice "at issue" in this litigation. For these reasons and all those stated above, the Defendants' Motion for Protective Order should be denied. Mr. Loveless, Ms. Huddle, the remaining Board trustees, and the District should answer Dr. Hefner's questions. Furthermore, Dr. Hefner requests the Court award him all fees and costs associated with this motion, specifically the costs associated with having to reconvene the depositions of Mr. Loveless and Ms. Huddle.

**[signature on following page]**

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/Jonathan M. Knicely*
    Paul T. Collins, Federal Bar No. 9055
    E-Mail: paul.collins@nelsonmullins.com
    Jonathan M. Knicely, Federal Bar No.
    E-Mail: Jonathan.knicely@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC 29201
    (803) 799-2000

*Attorneys for Plaintiff Dr. Stephen Hefner*

Columbia, South Carolina

June 20, 2024.