IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Dr. Stephen Hefner, ) | Civil Action Number:   3:23-cv-02156-MGL |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| School District Five of Lexington and ) | **SUPPLEMENTAL BRIEF** |
| Richland Counties, Kenneth Loveless ) | **IN SUPPORT OF DEFENDANTS'** |
| individually and his official capacity, ) | **MOTION FOR PROTECTIVE ORDER** |
| Catherine Huddle individually and in her ) | |
| official capacity, Jan Hammond ) | |
| individually and her official capacity, and ) | |
| Jaramillo Accounting Group, LLC, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Defendants School District Five of Lexington and Richland Counties, Loveless, Huddle, and Hammond (the School District Defendants), submit this supplemental brief in support of their Motion for Protective Order [ECF Dkt. 33], and following a hearing on this motion before The Honorable Paige J. Gossett, United States Magistrate Judge, on August 16, 2024.

As an initial matter, although federal legislators' immunity and privilege derive from the Speech and Debate Clause, and state and local legislators' from federal common law, the protections offered are "essentially coterminous." *Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731-34 (1980). "The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial

1

interference or distorted by the fear of personal liability." *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). Generally, legislative privilege appears to be a component of legislative immunity.

Additionally, legislators not sued retain the privilege. *See MINPECO, S.A. v. Conticommodity Servs., Inc.,* 844 F.2d 856, 859 (D.C. Cir. 1988) ("A litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive."). The privilege also extends to former legislators. *See United States v. Johnson*, 383 U.S. 169 (1966) (finding former congressmen had legislative privilege).

Inquiries into whether an action is legislative (receiving immunity) or administrative concern fringe actions. The Speech and Debate Clause provides explicit immunity and privilege in two areas:

> The Senators and Representatives … shall in all Cases, except Treason, Felony and Breach of the Peace, be [1] privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and [2] for any Speech or Debate in either House, they shall not be questioned in any other Place.

Const. Art. 1, s 6, cl. 1. Plaintiff literally seeks to question the Board members in this case about their speech and debate: what was said in executive session and what the individual and collective motives were. However, the Board members are both immune for their words and actions in executive session and privileged from revealing either, regardless of whether their ultimate actions were legislative or administrative.

*Doe v. McMillan*, 412 U.S. 306, 307-08 (1973), dealt with a legislative report similarly offensive to the plaintiffs as here. In *Doe*, the House of Representatives authorized a committee to investigate agencies, the committee submitted a report on the public school system, and the House published the report. *Id.* at 307-08. Plaintiff students, discussed in the report by name, sued for

2

violations of their statutory, constitutional, and common-law rights to privacy. *Id.* at 309. The Supreme Court held that the congressional defendants were immune, reasoning:

> The acts of authorizing an investigation pursuant to which the subject materials were gathered, holding hearings where the materials were presented, preparing a report where they were reproduced, and authorizing the publication and distribution of that report were all 'integral part(s) of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'

*Id.* at 313 (quoting *Gravel*, 408 U.S. at 625); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 124–25 (1979) ("Voting and preparing committee reports are the individual and collective expressions of opinion within the legislative process. As such, they are protected by the Speech or Debate Clause."). Accordingly, the individual Board members are immune for voting to publish the JAG report at issue in this case. More pertinently, *McMillan* demonstrates that legislative investigations, hearings, preparation of reports, and authorizing their publication are all part of the deliberative and communicative process, i.e., speech and debate. As such, legislators are privileged from being questioned regarding them.

> The Supreme Court once endorsed a protective order forbidding questioning any witness:
>
> (1) concerning the Senator's conduct, or the conduct of his aides, at the June 29, 1971, meeting of the subcommittee; (2) concerning the motives and purposes behind the Senator's conduct, or that of his aides, at that meeting; (3) concerning communications between the Senator and his aides during the term of their employment and related to said meeting or any other legislative act of the Senator; (4) except as it proves relevant to investigating possible third-party crime, concerning any act, in itself not criminal, performed by the Senator, or by his aides in the course of their employment, in preparation for the subcommittee hearing.

*Gravel*, 408 U.S. at 628-29 (footnote omitted); *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators").

The Board Members' executive session remarks and motivations lie at the core of legislative privilege. And the privilege applies regardless of whether the activities in question were legislative or administrative. Regardless, the actions at issue in this matter were legislative. In *Schlitz v. Com. of Va.*, the court found that the decision of a legislature to elect a judge involved a core legislative function because "[i]t involves deliberative and communicative processes by legislators at the committee level through a vote." 854 F.2d 43, 46 (4th Cir. 1988). Legislative immunity forbade inquiry into whether declining to elect the plaintiff was based on age discrimination. *Id.* Here, Plaintiff seeks to inquire into the Board's deliberative and communicative process.

Notwithstanding, Plaintiff cannot overcome the Board members' privilege. Although absolute immunity sometimes gives way in criminal cases, legislators are almost always immune in civil matters. *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 333-34 (E.D. Va. 2015); *Lee v. Virginia State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *5 (E.D. Va. Dec. 23, 2015) (citing *United States v. Gillock*, 445 U.S. 360, 373 (1980) (*"Tenney* and subsequent cases on official immunity have drawn the line at civil actions.")). *Lee* added:

> In ordering limited production in *Bethune-Hill*, this Court explained the unique nature of redistricting cases by noting that they are "extraordinary" and that "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of legislative self-entrenchment." *Bethune-Hill*, 2015 WL 3404869, at *9.

*Id.* Plaintiff's claims in this action lack such extraordinary circumstances. Additionally, *Bethune-Hill*, affirmed individual legislators' absolute immunity. It justified disclosure because individual legislators had not been sued, which is not the case here. 114 F. Supp. 3d at 334-36.

4

As to Plaintiff's argument that the Board's interference with contract claim was spurious, "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). The Court noted that the privilege would be of little value if it was subject to "speculation as to motives." *Id.*

## CONCLUSION

For the above reasons, and on the grounds previously asserted, Defendants respectfully request that the Court enter a protective order barring Plaintiff from inquiring into communications during executive sessions of the Board of Trustees for School District Five of Lexington and Richland Counties, as well as the motives of the Board or its members, in the course of discovery in this matter.

Respectfully submitted,

DAVIDSON & WREN, P.A.

BY:   *s/Michael B. Wren*
          Michael B. Wren, #7852
          Brian C. Mauldin, #14177
          1611 Devonshire Drive, Second Floor
          Post Office Box 8568
          Columbia, South Carolina 29202
          T: 803-806-8222
          F: 803-806-8855
          E-Mail:  mwren@dml-law.com
                      bmauldin@dml-law.com

ATTORNEYS FOR DEFENDANTS
SCHOOL DISTRICT FIVE OF LEXINGTON AND
RICHLAND COUNTIES, KENNETH LOVELESS,
CATHERINE HUDDLE, AND JAN HAMMOND

Columbia, South Carolina
August 23, 2024